# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATHY PETRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-16-644-D |
| ) | |
| CAROLYN W. COLVIN, acting ) | |
| Commissioner Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Cathy Petro (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 5.

After a careful review of the record, the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 11-25; *see* 20 C.F.R. § 404.1520(a)(2); *see also Wall v.* Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, physically, by degenerative disc disease of the lumbar spine, rheumatoid arthritis, sinus tachycardia, GERD, irritable bowel syndrome, and obesity, and, mentally, by major depressive disorder, recurrent, and generalized anxiety disorder;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) for light work that required her to stoop, balance, and climb ramps, stairs, scaffolds, and ladders only occasionally, and to perform only simple and complex tasks and to relate only on a superficial work basis with coworkers and supervisors with no public interaction;

(4) was unable to perform any past relevant work;

(5) was able to perform jobs existing in the national economy; and so,

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

(6) had not been under a disability, as defined in the Social Security Act, from September 30, 2011—her alleged onset of disability date—through January 15, 2015, the date of the ALJ's decision.

AR 11-25.

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-3. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v.*

*Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issue for judicial review.

The single issue for review is whether the ALJ committed reversible error by "fail[ing] to include [Plaintiff's] need for frequent bathroom breaks in her RFC due to the diuretics she is prescribed for her edema from her sinus tachycardia." Doc. 11, at 2.

### C. Whether the ALJ's assessment of Plaintiff's RFC was erroneous.

#### 1. Plaintiff's arguments.

Plaintiff asserts the ALJ "should have noticed [her] prescribed diuretics caused frequent bathroom breaks and included that limitation in RFC." *Id.* To support her assertion, she states—accurately—that "[t]he ALJ found the severe impairment[] of . . . sinus tachycardia . . . . ." *Id.* at 3.[2] This was Plaintiff's last mention of her sinus tachycardia impairment. *Id.* at 3-8. Continuing on, she alleges she "has had heart or coronary disease (CAD) for several years as noted in the ALJ decision." *Id.* at 3. Conspicuously, Plaintiff does not cite to any page in the ALJ's hearing decision where he "noted" that she has CAD, an impairment that "happens when the arteries that supply

---

[2]    "[S]inus tachycardia" is the "[r]apid beating of the heart" "originating in the sinus node." *Stedman's Medical Dictionary* 1931 (28th ed. 2006).

5

blood to heart muscle become hardened and narrowed."[3] *Id.* Subsequently, and once again without citation to the record, Plaintiff claims "the ALJ found CAD was a severe impairment," and then proceeds to discuss the use of diuretics in the treatment of CAD. *Id.* at 4. This is simply not the case. The ALJ did *not* find that Plaintiff was severely impaired by CAD. *See* AR 11.

In any event, to further support her claim that the ALJ erroneously failed to include her need for frequent bathroom breaks in the RFC, Plaintiff maintains the ALJ "also noted her edema," Doc. 11, at 3 (citing AR 13-14); "heard testimony about her need to elevate her legs during the day," *id.* (citing AR 44); "heard testimony about her use of diuretics which triggered a need for extra bathroom breaks during the day," *id.* (citing AR 46); "even came back to it later in the hearing and questioned her closely about it and she clarified there are times when she had to go 3-4 times an hour," *id.* (citing AR 48); and "even stopped questioning the Vocational Expert (VE) to come back to it again." *Id.* (citing AR 49-50).

In addition, Plaintiff submits "[s]he has been on diuretics throughout the MER,[4] 2008-2014, but here are a few examples covering that time period. AR 188, 377, 389, 468." Doc. 11, at 4. She explains "she had edema noted by

---

[3]  *See https://medlineplus.gov/coronaryarterydisease.html.*

[4]  Presumably, Plaintiff is referring to the medical evidence of record.

6

her doctor's; that is why she was placed on diuretics, a well-known treatment for CAD impairments, that removes waste from the body" and that "[f]luid retention and CAD go hand in hand. AR 377, 387-388." *Id.* She argues that "[d]espite all of this evidence [the ALJ] included no such limitations in RFC. He never connected the dots between her prescribed use of diuretics and her need for extra bathroom breaks in her RFC." *Id.*

The first record Plaintiff cites is a medication list she prepared on December 20, 2012. *Id.* (citing AR 188). There, she stated that John Williams, M.D., had prescribed Lasix, and she noted "[w]ater retention" as the reason for the medicine. AR 188. On the same list, Plaintiff reported that Dr. Williams had also prescribed Tenoretic to "[t]reat[] the heart condition and keep[] it down along with a built in diuretic." *Id.*

Plaintiff's second record citation is to a treatment note dated September 16, 2013, by Crystal Richerson, PA. Doc. 11, at 4 (citing AR 377). It reflects Plaintiff's report to PA Richerson that "[s]he is currently taking lasix for edema, which is also controlled." AR 377. Plaintiff also reported "urgency and discomfort with urination" and "that she had bladder polyps removed in the past, but hasn't seen a urologist in 'awhile'." *Id.* There is no indication in the treatment note, however, of any complaint by Plaintiff of urinary frequency. *Id.* On examination, there was "[n]o lower ext. edema noted" by PA Richerson. *Id.*

7

The third cited record is part of PA Richerson's March 24, 2014, treatment note stating, "Cont. tenoretic for sinus tach. [and] [l]asix prn edema." Doc. 11, at 4 (citing AR 389).

The last of the four "examples" Plaintiff cited to show that "[s]he has been on diuretics throughout the MER," is a May 29, 2008, progress note by Kathryn Brewer, M.D. *Id.* (citing AR 468). Under "Medications," Dr. Brewer listed "? PRN Lasix 40mg" and "Tenoretic 50/25 mg . . . ." AR 468.

Of the three record references, Plaintiff then submits in connection with her argument that the edema noted by her doctors "is why she was placed on diuretics, a well-known treatment for CAD impairments . . ." and that "[f]luid retention and CAD go hand in hand," the first, AR 377, was addressed above. Doc. 11, at 4. The second record, a December 12, 2013, treatment note by PA Richerson, shows that Plaintiff reported her "[e]dema is much better-only having to take the lasix on a rare occasion." AR 387. On examination, PA Richerson noted "no edema . . . ." *Id.* The final record citation is to the first page of PA Richerson's March 24, 2014, treatment note. Doc. 11, at 4 (citing AR 388). This note reflects that Plaintiff "[complained of] joint swelling at times, along with lower extremity swelling. She takes the lasix only when the swelling is 'bad.'" AR 388. On examination, PA Richerson noted "no edema . . . ." *Id.*

Plaintiff submits, "She has been on Lasix since 2008. AR 468. She also takes Tenoretic. AR 188. Both of these drugs cause frequent urination and she had to take them to attempt to control her CAD. She has never gotten off these drugs, but had to add even more over the years." Doc. 11, at 5. According to Plaintiff,

> [t]he above are sufficient examples to show: either this ALJ did not look at the entire file, especially medications, or he disregarded their impact. Substantial evidence fails to support the ALJ's errant lack of a finding regarding frequent incontinence[5] that will take [her] off task and should have some related limitation in RFC.

*Id.*

### 2. Analysis of Plaintiff's claim of error.

Plaintiff fails to support her claim of error with evidence of any functional requirement for frequent bathroom breaks imposed by a medical source and overlooked by the ALJ. Moreover, the records Plaintiff relies on to establish a functional limitation—and to establish she had to add an

---

[5] In the same manner that she abruptly recast a sinus tachycardia impairment as coronary artery disease, Plaintiff initially faulted the ALJ for failing to accommodate an alleged edema- and diuretic-related need to urinate frequently, Doc. 11, at 2-5, before claiming he erred by failing to find that she suffers from frequent incontinence. *Id.* at 5, 6, 7. "Incontinence" is the "[i]nability to prevent the discharge of any of the excretions, especially of urine or feces." *Stedman's Medical Dictionary* 962. Plaintiff cites no evidence of an incontinence diagnosis, Doc. 11, and the undersigned "will not comb through the record where counsel has not provided specific references tied to an argument." *Effinger v.Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)).

9

increasing number of diuretic drugs "over the years"—do not. *Id.* Instead, those records, detailed above, demonstrate both a *decrease* in her use of Lasix and the absence of edema. And, these records do not reflect that she ever complained to her doctors or questioned them about frequent urination or that her doctors initiated any such discussions with her, advising of that consequence.

Additionally, contrary to Plaintiff's assertion that the ALJ failed to consider the entire record, the hearing decision reflects the ALJ's detailed review of the medical, opinion, and subjective evidence of record as well as his focus on Plaintiff's stated difficulties with edema. AR 11-23. He fully explicated the treatment records completed by Plaintiff's medical providers and discussed, at length, the findings made by Robin Hall, M.D., following the doctor's consultative physical examination of Plaintiff on March 4, 2013. *Id.* at 14, 15, 345-47.

The ALJ found that Dr. Hall had diagnosed Plaintiff, in part, with "sinus tachycardia with pitting edema per history . . . ." *Id.* at 14, 15. He found, however, that despite Plaintiff's report of sinus tachycardia with pitting edema, Dr. Hall's "cardiovascular examination reportedly revealed [Plaintiff's] heart to have regular rate and rhythm without murmurs, rubs, or gallops, or clicks [and] that examination of [Plaintiff's] extremities revealed trace edema in her bilateral hands to the level of the wrists, but there was no

10

report of pitting edema . . . ." *Id.* Notably, the ALJ's detailed summary of Dr. Hall's findings does not reflect that Plaintiff reported frequent urination to Dr. Hall, the physician who examined Plaintiff for the express purpose of evaluating her physical impairments at the SSA's request. *See id.* at 14, 15, 345-47.

The ALJ also carefully considered Plaintiff's self-report of her functional abilities and limitations, documented in a form she submitted in connection with her claim for Social Security benefits on January 13, 2013. *Id.* at 21-22, 206-13. Plaintiff had the opportunity in that form to detail "[h]ow [her] illnesses, injuries, or condition limit [her] ability to work," *id.* at 206, and "affect [her] sleep," *id.* at 207, and to also include "information [she] did not show in earlier parts of th[e] form." *Id.* at 213.

As the ALJ's summary of the self-report reflects, Plaintiff complained, in part, about pain, fatigue, depression, and edema-related difficulty with prolonged sitting or standing, but she voiced no complaint about daily frequent urination issues, *id.* at 206-13, and, when asked how her impairments impacted her ability to sleep, she made no mention of nocturnal urination frequency and advised, instead, that "[i]ts hard to get comfortable and the pain wakes me up." *Id.* at 207. Finally—and significantly—when called on in her function report to list any of her medications that caused side

effects, Plaintiff listed Tenoretic[6] and characterized its side effect as "[d]rowsy." *Id.* at 213.

In sum, Plaintiff simply concludes—without citation to the record, or otherwise—that Lasix and Tenoretic "cause frequent urination and she had to take them . . . ." Doc. 11, at 5. But the records Plaintiff does cite reveal the absence of edema on clinical examination and document the fact that she took Lasix only rarely. Moreover, those records do not reflect that she voiced, as might be expected, any concerns or complaints to her treatment providers about urinary frequency. And, tellingly, Plaintiff stated in her own function report that the only side effect she experienced from Tenoretic was drowsiness.

Nothing that Plaintiff has pointed to in the record supports a finding that the ALJ erred by not including a limitation in her RFC for frequent bathroom breaks due to the medications "prescribed for her edema from her sinus tachycardia." *Id.* at 2.

### III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

---

[6] She also listed: (1) "Prednesone," identifying "weight gain[,] bone weakening[, and] lowered immune system" as its side effects; (2) "methotrexate," identifying "nausea [and] lowered immune system" as side effects; and (3) "Valium," identifying its side effect as "[d]rowsy." AR 213.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by January 24, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 4th day of January, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE